IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SCOTT M. BYCZEK,

                Plaintiff,

    v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.

OPINION AND ORDER

Case No. 11-cv-434-wmc

---

Pursuant to 42 U.S.C. § 405(g), plaintiff Scott M. Byczek seeks judicial review of an adverse decision of the Commissioner of Social Security ruling him ineligible for Supplemental Security Income ("SSI"), codified at 42 U.S.C. § 1381 *et seq*. Specifically, Byczek contends that the Administrative Law Judge ("ALJ") erred as a matter of law by: (1) failing to account for limitations of concentration, persistence and pace in formulating hypothetical questions for the vocational expert; (2) adopting the testimony of the medical expert, an internist, over plaintiff's treating physician, a neurologist; and (3) basing her assessment of Byczek's credibility with respect to his subjective complaints of pain and daily activities on a distortion of the record. The court finds that the ALJ committed reversible error with respect to all three grounds posited by Byczek. Therefore, the decision of the Commissioner will be reversed.

FACTS[1]

**A. Background**

On June 23, 2006, Byczek filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income.  (AR 120.)[2]  In both applications, Byczek alleged disability beginning August 31, 2001.  (AR 141.)  On the applications, Byczek listed spasmodic torticollis and ADD (attention deficit disorder) -- though it appears that ADHD (attention deficit hyperactivity disorder) may be the more accurate description -- as the illnesses, injuries or conditions that limited his ability to work.  (AR 144.)  Byczek reports suffering from both conditions since childhood.

Spasmodic torticollis or cervical dystonia is a "painful condition in which your neck muscles contract involuntarily, causing your head to twist or turn to one side. Cervical dystonia can also cause your head to uncontrollably tilt forward or backward."  (Pl.'s Br (dkt. #11) (quoting http:www.mayoclinic.com/health/spadmodic-torticollis/DS00836).)  The medical record contains treatment notes dating back to 2003 for this condition, including various injections, cervical blocks, and prescriptions for Vicodin and other pain relievers.

Byczek's claims were denied initially on November 14, 2006 (AR 48), and upon reconsideration on May 31, 2007 (AR 60).  Byczek then requested a hearing in front of an ALJ (AR 78), and a hearing was held via videoconference in front of ALJ Sharon L.

---

[1] The following facts are drawn from the administrative record, which can be found at dkt. #7.

[2] This appeal concerns only Byczek's application for supplemental security income.

Tanner on May 18, 2009 (AR 23).  Byczek was not represented by an attorney at the hearing, but a non-attorney representative, Frederick A. Johnson, attended the hearing with him.  The ALJ heard testimony from Sami A. Nafoosi, M.D., an impartial medical expert, and Jeanine Metildi, an impartial vocational expert.

On October 28, 2009, the ALJ issued her decision finding Byczek "not disabled" within the meaning of the Social Security Act from June 23, 2006, through the date of the decision.  (AR 14.)  Byczek appealed this decision, and, in a letter dated March 2, 2011, the Appeals Council denied review, making the ALJ's decision the final word of the Commissioner of Social Security.  (AR 4, 9.)  On June 16, 2011, Byzcek filed the present appeal, after receiving an extension from the Appeals Council.  Byzcek is now represented by counsel in this action.

B.  **Administrative Hearing**

At the hearing before the ALJ, Byczek testified to having both severe attacks and daily neck spasms.  These spasms pull his head forward, throwing him off balance, making it difficult for him to hold his head up.  (AR 29.)  Byczek further testified that relatively recent treatment with Botox helps a bit.  (AR 30.)  Byczek rated his pain as a 6 out of 10 most of the time, for which he takes Vicodin three times a day.  (AR 32.)  As for his ADHD, Byczek testified that it is difficult for him "to stay focused on the task at hand."  (AR 31.)

Next, the impartial medical expert, Dr. Nafoosi, testified that Byczek:  is limited to lifting 50 pounds on occasion, 25 pound frequently; has no restrictions with regard to

3

walking, standing or sitting; could occasionally work above shoulder limit; and is able to work 40 hours per week.

Based on the medical records, as well as Byczek's and Nafoosi's testimony, the ALJ then presented the following hypotheticals to and received the following answers from the vocational expert, Jenny Metildi:

> Q. [] I want you to assume an individual of the age and education level of the claimant, with the work history that you've outlined … There are no restrictions on sitting, standing, walking. This person can occasionally lift and carry 50 pounds [and] frequently lift and carry 25 pounds. Occasionally, [he could] work above shoulder level with either upper extremity. Based on this hypothetical, could this individual do the claimant's past relevant work?
>
> A. Only the work as the stock clerk, but not the lumber sales assistance -- sales work he was doing. Just the one job.
>
>  . . .
>
> Q. For the second hypothetical, I want to add simple, repetitive tasks [as a limitation]. Based on this hypothetical, could he do his past relevant work?
>
> A. He could perform the stocking job which is considered unskilled.

(AR 40.)

Byczek's representative at the hearing also asked Metildi whether an individual would be able to do the stocking job Metildi described if he were in pain for about two-thirds of the day. (AR 42.) Metildi responded that he would not be able to do past work or any other work. (*Id.*)

4

### C. Administrative Law Judge's Decision

Applying the five-step evaluation process, *see* 20 C.F.R. § 404.1520(a)(4), the ALJ found that Byczek's earning records establish that he acquired sufficient quarters of coverage to remain insured through June 30, 2003. As such, Byczek must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits. The ALJ also found that Byczek has not engaged in substantial gainful activity since June 23, 2006, the amended alleged onset date.[3] The ALJ also found that Byczek suffers from the two severe impairments: spasmodic torticollis and ADHD.

Next, the ALJ found that Byczek does not have a physical impairment or combination of physical impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. As for mental impairments, the ALJ found that Byczek's history of ADHD did not meet or medically equal the criteria of any Listing. In so finding, the ALJ concluded that the "paragraph B" criteria are not satisfied because his mental impairment causes only mild limitations on his activities of daily living and in his ability to maintain social functioning; only moderate limitations in his ability to maintain concentration, persistence and pace; and has not caused any episodes of decompensation of extended duration. The ALJ also found that the evidence failed to establish the presence of "paragraph C" criteria.

---

[3] Byczek initially listed August 31, 2001, as the initial onset date on his applications. At the ALJ hearing, Byczek's representative at the hearing agreed to amend the alleged onset to June 23, 2006. (AR 26.)

The ALJ acknowledged "acute exacerbations" on March 7, 2008, and March 20, 2009, but found that Byczek's condition is not so severe and these exacerbations are not so frequent to preclude him from basic work. At most of Byczek's visits with his treating physician, the ALJ found that the physician noted normal range of movement. (AR 19.) The ALJ gave "great weight" to Dr. Nafoosi, who had an opportunity to review the record in full and testified that Byczek was able to work a normal 40-hour work week, and gave "less weight" to Byczek's treating physician, Dr. Tan, because his assessment is "inconsistent with the objective evidence, type of treatment provided, and the relatively active lifestyle and activities of which the claimant has admitted he is capable." (AR 19.) As a result, the ALJ found that Byczek can lift / carry 50 pounds occasionally and 25 pounds frequently; has no restrictions in sitting, standing or walking; can occasionally work above shoulder level with either upper extremity; and is limited to simple, repetitive tasks.

The ALJ also found that Byczek's "activities of daily limiting are inconsistent with his claims of limitations and restrictions." (AR 20.) In so finding, the court relied on the fact that Byczek "continues to care for his personal hygiene, obtain meals, and carry out other housekeeping chores including cleaning, grocery shopping and washing the dishes without assistance or compromise." (AR 20.) The ALJ also noted Byczek's care of his 8-year-old son, his involvement with his girlfriend and family, hobbies, and ability to make his own reminders and handle money.

The ALJ ultimately found that Byczek has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c). In so finding,

the ALJ made the following credibility determination: "I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment." (AR 18.)

As for Byczek's mental impairment, the ALJ again relied on Dr. Joseph F. Roe, who examined Byczek on October 28, 2006. After conducting various tests, Dr. Roe diagnosed Byczek with ADHD by history, gave Byczek a global assessment functioning score of 65-70 indicating mild symptoms, and concluded that the claimant was able to understand, remember and carry out simple instructions. Based on this, the ALJ concluded that a residual functional capacity which limits Byczek to simple, repetitive work takes into account Byczek's mental limitations and is consistent with the objective medical evidence.

Based on this residual functional capacity and testimony from the vocational expert, the ALJ found Byczek capable of performing past relevant work as a stock clerk, and, therefore, not disabled within the meaning of the Social Security Act from June 23, 2006, through the date of the decision.

OPINION

Byczek challenges the ALJ's decision on three grounds. First, the ALJ failed to account for limitations of concentration, persistence and pace in posing hypothetical questions to the vocational expert. Second, she violated the treating physician rule by

adopting the testimony of the medical expert, an internist, over plaintiff's treating physician, a neurologist. Third, the ALJ's credibility assessment of Byczek's complaints of pain and daily activities is based on a distortion of the record. The court will address each challenge in turn.[4]

## I. Concentration, Pace and Persistence

The ALJ found that Byczek had moderate limitations in concentration, persistence and pace, but then failed to account for this limitation -- at least expressly -- in her questioning of the vocational expert. Instead, the ALJ asked the expert to consider whether Byczek could perform past relevant work if limited to "simple, repetitive tasks." (AR 40.) Relying on Seventh Circuit case law, Byczek argues that the ALJ's consideration of simple, repetitive tasks does not account for Byczek's moderate limitations with respect to concentration, persistence and pace. (Pl.'s Br. (dkt. #11) 17-19.) Indeed, as Byczek points out, case law is legion that "employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration

---

[4] The standard by which a federal court reviews a final decision by the Commissioner is well settled: the Commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (explaining that when reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge.). Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the Commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993). Even so, the court must conduct a "critical review of the evidence" before affirming the Commissioner's decision, *id.*, and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

those positions that present significant problems of concentration, persistence and pace." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010); *Stewart v. Astrue*, 561 F.3d 679, (7th Cir. 2009) (noting that the court has previously and repeatedly rejected the contention that "the ALJ accounted for Stewart's limitations of concentration, persistence, and pace by restricting the inquiry to simple routine tasks").

Still, the Commissioner argues that the ALJ determined that Byczek's "moderate limitations in concentration left him with the residual functional capacity to perform simple, routine work." (Def.'s Opp'n (dkt. #12) 12.) As far as the court can tell however -- and the Commissioner does not direct the court to any specific portion of the record -- the ALJ does not provide this link. Even if she had, Byczek's limitations with respect to his ADHD are not accounted for by limiting him to simple, repetitive tasks. As the Seventh Circuit has explained repeatedly, "[t]he ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor*, 627 F.3d at 620. If anything, Byczek appears interested in learning *new* things -- in particular, he testified as to his interest in reading about current events.

Where the vocational expert's testimony is focused on hypotheticals, the ALJ's questions "must include all limitations supports by medical evidence in the record." *Stewart*, 561 F.3d at 684. Specifically, these questions "must account for documented limitations of 'concentration, persistence or pace.'" *Id*. The ALJ, here, failed from the hypotheticals to account for Byczek's limitation for concentration, pace and persistence,

9

and the Commissioner has offered no reason to explain this omission. Remand is, therefore, warranted.

## II. Treating Physician

In her decision, the ALJ also discounted the opinion of Byczek's treating physician, Dr. Tan, as to the severity of Byczek's condition and his work limitations, finding that his "assessment is inconsistent with the objective evidence, type of treatment provided, and the relatively active lifestyle and activities of which the claimant has admitted he is capable." (AR 19.) The ALJ instead adopted the opinion of Dr. Nafoosi, the independent medical examiner.

Byczek began seeing Dr. Tan in September 2007. (AR 323.) The record reveals that Dr. Tan saw Byczek every month or two for a Botox injection, cervical block or other treatment. (AR 312, 320, 324.) In September 2008, Dr. Tan completed a residual functional capacity assessment for Byczek. (AR 305-07.) On the form, he specifically noted "[decreased] range of motion of neck with [increased] pain. [Increased] tenderness around neck. Shoulder with muscle tightness. Hypertrophy of the neck muscles." Dr. Tan checked off several symptoms -- ranging from difficulty twisting neck, pain, and muscle weakness, to depression and difficulty thinking and concentrating.

Dr. Tan went on to check off "often" (the mid-point in a list ranging from never to constantly) in response to the question, "How often do your patient's symptoms plus the side effects of medications interfere with his or her ability to concentrate?" Dr. Tan also indicated that Byczek could sit for 1 hour at a time and stand for 30 minutes. In

10

response to the question, "Over an 8-hour workday, how much *total time* would your patient be able to sit and stand if he or she were able to alternate between the two?", Dr. Tan selected "around 2 hours." Dr. Tan also noted that Byczek would have to walk around about every 30 minutes for 10 minutes at a time. Dr. Tan limited Byczek to frequently lifting 10 pounds and occasionally lifting 20 pounds. Dr. Tan also indicated that Byczek would be limited in the amount of repetitive reaching he can do. To the question, "[o]n average, how often would your patient be unable to go to work as a result of his or medical problems?," Dr. Tan selected the most frequent option of "> than 3 X a month."

On the form, Dr. Tan noted that these functional problems are consistent with the signs and symptoms found, and also noted that Byczek's pain is a 6 on a scale of 1-10. In a letter dated June 30, 2008, Dr. Tan again explained, "[i]t is my opinion that my patient's self-description of pain and other more subjective symptoms are consistent with the disease process. Nothing in my experience with this patient would cause me to question his credibility in this regard." (AR 308) Dr. Tan also noted, "a patient may be capable of working on some days, but typically over time, would have many days where work would not be tolerated." (AR 308)

"A treating doctor's opinion receives controlling weight if it is 'well-supported' and 'not inconsistent with the other substantial evidence' in the record." *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) (quoting 20 C.F.R. § 404.1527(d)(2)); *see also Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). An ALJ must offer "good reasons" for discounting the opinion of a treating

11

physician. *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011); *Campbell*, 627 F.3d at 306.

The ALJ discounted Dr. Tan's opinions as to Byczek's limitations because of the lack of "objective evidence" to support his assessment. (AR 19.) The ALJ, however, does not describe what "objective evidence" she would have expected to see in the record to bolster Dr. Tan's assessment, beyond the detailed findings Tan's own records provide. Even Dr. Nafoosi in his very limited testimony acknowledged that spasmodic torticollis is a muscular condition, and therefore any abnormality would not be visible on an x-ray. (AR 36.) The record does reflect that (1) Dr. Tan treated Byczek over a nine-month period of time; and (2) his impression of Byczek's condition appears consistent with other doctors who had treated Byczek over the same period. The lack of "objective evidence" is far from a "good reason" required to reject a treating physician's opinion. *See Martinez*, 630 F.3d at 698.

The ALJ also rejected Dr. Tan's residual functional capacity assessment because it was inconsistent with Byczek's daily activities. As discussed below, the difficulty with Byczek's condition is that it presents sporadically. While there may be some constant level of discomfort, the disabling quality of the condition appears to be episodic. Therefore, the fact that Byczek is able to care for himself and his 8-year-old son, and maintain relationships with his girlfriend and family is not inconsistent with the severe limitations and pain that he experiences episodically.

Even more troubling than the ALJ's rejection of the opinion of the treating physician is her complete reliance on the independent medical examiner's cursory

12

testimony. While acknowledging that Byczek has medical impairments that limit his ability to function in a work setting, Dr. Nafoosi -- without explanation -- still opines that Byczek could perform jobs that require "him to lift more than 50 pounds on occasion, 25 pounds frequently. There would be no restrictions with regards to walking, standing or sitting. He could occasionally work above shoulder level with either upper extremity." (AR 36.) Dr. Nafoosi further opined that Byczek would be able to complete an eight-hour workday or 40-hour work week and that he would not need more breaks than usual. (AR 37.)

In support of his opinions, Dr. Nafoosi failed to direct the ALJ to anything in the medical record or provide any supportive reasoning. More importantly, Dr. Nafoosi failed to explain *why* he rejected Dr. Tan's assessment of Byczek's limitations. Indeed, as plaintiff points out, Dr. Nafoosi has been criticized by at least one other court for failing to provide any basis for his conclusion, including his failure to analyze the reports of the treating physician. (Pl.'s Opening Br. (dkt. #11) 27 (citing *Powell v. Chater*, 959 F. Supp. 1238 (C.D. Cal. 1997)).)

This is not just a failing of Dr. Nafoosi. In adopting the opinions of a consulting physician in direct contradiction to those of the treating physician's, the ALJ was required to probe as to the basis for his opinion. *See Gudgel v. Barnhart*, 345 F. 3d 467, 470 (7th Cir. 2003) ("An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice."). The fact that Dr. Nafoosi reviewed the entire medical record is an insufficient basis, especially in light of the fact

that Dr. Tan's treatment of Byczek is a significant part of the medical record, and the other doctors' notes concerning Byczek's condition are consistent with that of Dr. Tan. Specifically, all of the medical evidence -- save Dr. Nafoosi's unsupported opinion -- indicates that Byczek experiences severe pain on a sporadic basis which severely limits his ability to function.

Because the ALJ failed to offer a good reason for heavily discounting the treating physician's assessment of Byczek's limitations, instead relying on an unsupported opinion of a non-treating physician, the court will reverse the Commissioner's finding of no disability and remand for further consideration.

## III. Credibility Determinations

Finally, Byczek challenges the ALJ's conclusion that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R 18.) The court agrees with plaintiff that this language is vague at best. It appears that the ALJ rejected Byczek's testimony to the extent that it conflicts with his ability to lift more than 50 pounds occasionally and 25 pounds frequently, and work an 8-hour day or 40-hour work week without any other restrictions, but even this interpretation is far from clear. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002) (rejecting ALJ's decision because it "is so poorly articulated as to prevent meaningful review").

Even if the court is accurately interpreting the ALJ's credibility finding, her determination fails to account for contemporaneous treatment notes describing episodes of severe pain. As already discussed, while Byczek may at times be fully functional -- reflected in his ability to maintain his household, engage with family, etc. -- the ALJ fails to explain her discounting Byczek's episodes of severe pain and, more importantly, how these episodes would impact Byczek's employability. Most importantly, the ALJ does not account for this limitation in the questions posed to the vocational expert, even though vocational experts in other cases consistently testify that absences of 24-25 days per year or 2-3 per month is the maximum an employer would tolerate. *See, e.g., Huffman v. Astrue*, No. 08-cv-1336, 2010 WL 685897, at *14 n.8 (C.D. Ill. Feb. 19, 2010) (maximum of 2.5 absences allowed per month); *Johnson v. Astrue*, No. 3:07-cv-45, 2008 WL 2115616, at *2 (E.D. Tenn. May 19, 2008) (typical employer would not tolerate more than 2 absences per month); *Bennett v. Barnhart*, 288 F. Supp. 2d 1246, 1255 (N.D. Ala. 2003) (24-25 absences in 12-month period would preclude employability); *Hancock v. Barnhart*, 206 F. Supp. 2d 757, 762 (W.D. Va. 2002) (absences of three days a month would result in loss of occupational base). Because the ALJ failed to provide reasons to support her rejection of Byczek's account of episodes of severe pain, the court will remand on that basis as well.

ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of Social Security, denying plaintiff Scott M. Byczek's application for

supplemental security income benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The clerk of court is directed to enter judgment for plaintiff and close this case.

    Entered this 25th day of March, 2014.

                                BY THE COURT:

                                /s/
                                _____
                                WILLIAM M. CONLEY
                                District Judge